UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TERRENCE LANG**,

*Plaintiff*,

v.

**CLARITY SERVICES, INC.**,

*Defendant*.

Case Number: **8:26-cv-2263**

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** the Plaintiff, **TERRENCE LANG** ("Mr. Lang"), by and through his undersigned counsel, and complains of the Defendant, **CLARITY SERVICES, INC.** ("Clarity"), and in furtherance thereof states as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Lang against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.      Clarity is subject to the provisions of the FCRA and to this Court's jurisdiction pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because Clarity committed the acts of which Mr. Lang complains in Hillsborough County, Florida.

## PARTIES

### Mr. Lang

5.      Mr. Lang is a natural person residing in Riverview, Hillsborough County, Florida.

6.      Mr. Lang is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7.      Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.      Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

9.      Clarity is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing

consumer reports, specifically including mail, internet, and/or telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Mr. Lang

10. Around April of 2022, Clarity began maintaining a credit file on Mr. Lang.

11. At some point after opening its file, Clarity began incorporating credit information belonging to a separate, unrelated consumer into Mr. Lang's credit file.

12. Clarity incorrectly associated information evidently belonging to someone named Sally Stepp ("Stepp"), an unrelated individual who appears to live in West Portsmouth, Ohio (mistakenly spelled as "Westportsmouth"), into its credit file regarding Mr. Lang.

13. Clarity incorporated a significant amount of information likely belonging to Stepp into Mr. Lang's credit file including a date of birth in 1989, an Ohio driver's license number, residential history, housing status, and contact information including telephone numbers and email addresses, employment information, income information, and an account number for an Ohio bank account.

14. Clarity's credit file for Mr. Lang constitutes a *mixed file*.

15. A mixed file contains information about two or more people, rather than only the person to whom the file should pertain.

16. Clarity provides consumer reports to subprime lenders, many of whom use the personal identifying information Clarity maintains to verify online loan applicants' identities.

17. Clarity also uses data such as bank-account and employment information to generate risk scores that it provides to certain end users upon request.

18. As a result, Clarity's inclusion of another consumer's personal identifying information can seriously impair a consumer's ability to obtain credit.

19. Clarity knows its automated systems frequently and incorrectly match tradeline information to the wrong consumer's credit file based on minimal commonalities.

20. Despite this knowledge, Clarity has declined to correct systems that often appear to match consumer data to its files based on a single data point, rather than all information data furnishers provide.

21. As a CRA, Clarity has a legal obligation to use reasonable procedures to ensure the maximum possible accuracy of the consumer reports it sells. *See* 15 U.S.C. § 1681e(b).

22. Despite that obligation, Clarity sold Bright Lending a consumer report about Mr. Lang on or about May 10, 2022 in connection with a personal loan application another consumer initiated, presumably Stepp.

23. Clarity had no permissible purpose to sell a report regarding Mr. Lang to a payday lender that requested a report about Sally Stepp of West Portsmouth,

Ohio, especially because Stepp's date of birth and Social Security number did not match Mr. Lang's.

24.     Despite lacking a permissible purpose, Clarity still sold the report about Mr. Lang to Bright Lending.

25.     Upon learning that Clarity had sold his information to a company that had neither requested a report about him nor had a legal purpose to obtain it, Mr. Lang became deeply concerned.

26.     Clarity then provided more than 100 consumer reports that mixed Mr. Lang's information with Stepp's to Mr. Lang's actual and potential creditors.

27.     Beyond the systemic problems Clarity's automated systems routinely encounter in falsely associating different consumers with few commonalities, Clarity programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

28.     For example, Clarity incorrectly incorporated "CARLOW PARK RIVERVIEW FL 33579" under the "Home Address" header in Mr. Lang's credit file on or about May 17, 2025, an address that lacked a house or building number.

29.     Clarity incorporated three conflicting iterations of the "CARLOW PARK" address into Mr. Lang's credit file, including two distinct versions that placed the street in Riverview, Florida and Lakeland, Florida.

30.     The Lakeland entry is demonstrably false, as no such street exists within that municipality.

31. The information Clarity incorporated into Mr. Lang's credit file regarding his "Months at Address" is contradictory and mathematically impossible.

32. For example, on or about December 7, 2023, Clarity incorporated "3 Months," "23 Months," and "36 Months" into Mr. Lang's credit file less than a minute apart.

33. As an additional example, Clarity incorporated both "0 Months" and "48 Months" into Mr. Lang's credit file on or about December 21, 2022, which cannot be accurate simultaneously.

34. Clarity's inclusion of wildly fluctuating, overlapping, and contradictory residential timelines created a facially inaccurate residential history in violation of 15 U.S.C. § 1681e(b), and falsely suggested that Mr. Lang frequently moved or lived at multiple residences at once.

35. Clarity also incorporated "OTHER" as a housing status for Mr. Lang on or about June 14, 2023.

36. Clarity's credit file does not contain a legend defining what the "OTHER" housing status signifies, but it is likely a catch-all category suggesting a non-traditional housing arrangement like a dormitory or temporary housing.

37. Many subprime lenders use housing status to gauge risk and consider an "OTHER" or "UNKNOWN" status as less stable than typical statuses like "OWN" or "RENT," resulting in them providing less favorable lending terms or denying credit completely.

38. Clarity's proprietary credit scores heavily weigh changes in housing status, address, and employment.

39. Consequently, Clarity's inclusion of conflicting housing statuses likely had a significant negative impact on Mr. Lang's ability to obtain new credit with favorable terms.

40. Even more detrimentally, Clarity also incorporated incorrect employment and income data into Mr. Lang's credit file.

41. For example, Clarity included both "DISABILITY" and "SELLER" under the "Employer Name" section of Mr. Lang's credit file even though neither qualifies as an employer.

42. Clarity's failure to maintain reasonable procedures is further evidenced by its incorporation of a patently fictitious employer address into Mr. Lang's credit file.

43. On or about April 17, 2023, Clarity incorporated an address of "123 MAIN STREET RIVERVIEW FL" as an "Employer Address" into Mr. Lang's credit file.

44. Upon information and belief, "123 MAIN STREET" is an example of placeholder data that Clarity's system automatically inserts into a consumer's credit file when a data furnisher fails to provide an address or provides it in a format Clarity's system cannot parse.

45.     Clarity also incorporated "FIFTH THIRD BANK" into Mr. Lang's credit file as a purported "Occupation," an error Clarity's system should have identified as "FIFTH THIRD BANK" was also included under "Employer Name."

46.     Most egregiously, Clarity incorporated false and contradictory lengths of time under the "Months at Employer" section of Mr. Lang's credit file.

47.     For example, on or about December 7, 2023, Clarity incorporated "11 Months," "36 Months," and "72 Months" into Mr. Lang's credit file.

48.     As another example, on or about December 21, 2022, Clarity incorporated "0 Months" under the same header.

49.     Clarity's pattern of incorporating contradictory lengths of time creates the false impression that Mr. Lang frequently switched employers or had an unstable employment history.

50.     Many of the subprime lenders Clarity primarily serves closely review a consumer's tenure with the same employer, as income stability is central to their underwriting decisions.

51.     A credit report evidencing a job history of "0 Months" often harms a consumer's credit approval prospects because nearly all credit analyses view brief employment tenure negatively.

52.     Clarity incorporated wildly varying amounts under the "Net Monthly Income" header in Mr. Lang's credit report ranging between $1,400.00 and $5,200.00, which presented a demonstrably inaccurate financial profile for Mr. Lang.

53.     The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income to ensure the consumer is able to repay any funds the lender advances.

54.     Clarity incorporated multiple different entries under the "Pay Frequency" section of Mr. Lang's credit file including "BIWEEKLY," "JUST BIWEEKLY," "M," and "MONTHLY" during timeframes that clearly overlap.

55.     Mr. Lang has never received a paycheck on a monthly basis and terms such as "BIWEEKLY" and "JUST BIWEEKLY" evidently reference the same frequency.

56.     However, Clarity's automated system, which determines an applicant's "risk score," interprets terms like "BIWEEKLY" and "JUST BIWEEKLY" as separate pay frequencies, creating a more-adverse "risk score" due to perceived changes in the consumer's pay frequency.

57.     Each of the reports Clarity sold about Mr. Lang in the past two years contained false and inaccurate information about Mr. Lang's employment history, housing status, and income, in addition to data that belonged to an unrelated individual.

58.     The FCRA is clear in its requirement that as a CRA, Clarity is required to prepare accurate reports:

> **Accuracy of Report**. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable

procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. § 1681e(b).

59.    Clarity was thus aware that when it sold reports about Mr. Lang in the past two years that even under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

60.    As a result of Clarity's actions, Mr. Lang suffered damages, including wasted time trying to figure out what the information in his Clarity file means and how it got there, lost financial opportunities, loss of credit, lower credit scores, distress and aggravation, and damage to his reputation.

61.    Mr. Lang has hired the undersigned law firm to represent him in this matter and has assigned it his right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681e(b)

62.    Mr. Lang adopts and incorporates Paragraphs 1 – 61 as if fully restated herein.

63.    Clarity willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure the maximum possible accuracy of the consumer reports it sold about Mr. Lang, which included another individual's information and erroneous data about his income, residence, and employment.

64.    Multiple consumers have sued Clarity for similar conduct, and Clarity is aware that its procedures to ensure the accuracy of its reports are flawed.

65.   Clarity's conduct was thus either willful or performed with a reckless disregard for Mr. Lang's rights under the FCRA.

66.   As a result of its conduct, Clarity is liable to Mr. Lang for the greater of Mr. Lang's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorney's fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Mr. Lang respectfully requests this Honorable Court enter judgment against Clarity for:

a.   The greater of Mr. Lang's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

### COUNT II
### CLARITY'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681e(b)
(Pled in the Alternative to Count I)

67.   Mr. Lang adopts and incorporates Paragraphs 1 – 61 as if fully restated herein, and pleads this count strictly in the alternative to Count I.

68.   Clarity owed Mr. Lang a legal duty to utilize reasonable procedures to ensure the maximum possible accuracy of the consumer reports it sold about Mr. Lang.

69.     Clarity breached that duty by selling numerous consumer reports about Mr. Lang that included information belonging to a separate individual, along with erroneous and implausible information about Mr. Lang's income, length of residence, employment, and other matters.

70.     Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Mr. Lang is entitled to his actual damages, attorney's fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Mr. Lang respectfully requests this Honorable Court enter judgment against Clarity for:

a.     Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.     Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.     Such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681b(a)(3)

71.     Mr. Lang adopts and incorporates Paragraphs 1 – 61 as if fully restated herein.

72.     Clarity violated 15 U.S.C. § 1681b(a)(3) by furnishing at least one report about Mr. Lang to Bright Lending in response to a request concerning an unrelated individual with a different name, date of birth, and Social Security number.

73. Clarity had no reason to believe it had a permissible purpose to furnish the report because the consumer identified in Bright Lending's request shared few commonalities with Mr. Lang.

74. Via complaints from other consumers, Clarity is aware that its automated system often provides data about unrelated consumers in response to lenders' requests for consumer reports.

75. Clarity is thus liable to Mr. Lang for the greater of Mr. Lang's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

**WHEREFORE,** Mr. Lang respectfully requests this Honorable Court enter judgment against Clarity for:

a. The greater of Mr. Lang's actual damages or statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

### COUNT IV
### CLARITY'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681b(a)(3)
### (Pled in the Alternative to Count III)

76. Mr. Lang adopts and incorporates Paragraphs 1 – 61 as if fully restated herein, and pleads this count strictly in the alternative to Count III.

77. Clarity provided at least one report regarding Mr. Lang to Bright Lending in response to its request for a consumer report about an unrelated individual with a different name, date of birth, and Social Security Number.

78. By furnishing this report, Clarity negligently violated 15 U.S.C. § 1681b(a)(3) and Mr. Lang is entitled to his actual damages, reasonable attorney's fees, and costs.

**WHEREFORE**, Mr. Lang respectfully requests this Honorable Court enter judgment against Clarity for:

a. Mr. Lang's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Lang hereby demands a jury trial on all issues so triable.

Respectfully submitted on August 5, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Megan Rosenberg*

Megan A. Rosenberg, Esq.
Florida Bar Number: 1005213
MRosenberg@SeraphLegal.com
3505 East Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-567-1230 (Ext: 404)
Fax: 855-500-0705
*Counsel for Plaintiff*

Page **14** of **14**